UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

SOUTHERN COAL SALES CORPORATION

PLAINTIFF

CASE NO. 7:12cv265

v.

XCOAL ENERGY & RESOURCES, XCOAL ENERGY
& RESOURCES, LLC, and ERNIE L. THRASHER

DEFENDANTS

## COMPLAINT

Plaintiff, Southern Coal Sales Corporation ("SCS"), for its Complaint against the Defendants, Xcoal Energy & Resources ("Xcoal"), Xcoal Energy & Resources, LLC ("Xcoal LLC" and, together with Xcoal, "the Xcoal Defendants"), and Ernie L. Thrasher ("Thrasher"), allege and state:

### THE PARTIES, JURISDICTION AND VENUE

1. SCS is a Delaware corporation with its principal place of business located in Roanoke, Virginia.

2. Xcoal is, upon information and belief, a Pennsylvania limited partnership with its principal place of business located in Latrobe, Pennsylvania. Upon information and belief, none of Xcoal's partners are citizens or residents of Delaware or Virginia.

3. Xcoal LLC is, upon information and belief, a Pennsylvania limited liability company with its principal place of business located in Latrobe, Pennsylvania. Upon

information and belief, none of Xcoal's members are citizens or residents of Delaware or Virginia.

4. Thrasher, upon information and belief, is a citizen and resident of Florida, and he is the principal owner of the Xcoal Defendants as well as Xcoal LLC's managing partner.

5. This Court has subject matter jurisdiction over this action because it is between citizens and residents of different states and because the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.

6. The Xcoal Defendants are subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from their doing business in Virginia including, *inter alia,* from entering into contracts which were to be performed by Xcoal in Virginia.

7. Thrasher is subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from torts committed in and injury incurred by SCS in Virginia and because he caused and directed the Xcoal Defendants' acts of doing business in Virginia out of which this action arises.

8. Venue is proper in this Court because a substantial portion of the events and omissions giving rise to this action took place in this District.

## COMMON FACTUAL ALLEGATIONS

9. Prior to and/or during March 2011, SCS and Thrasher began discussing a transaction whereby SCS would sell and Xcoal would buy metallurgical and soft coking coal, to be delivered over a period of one year by SCS to Xcoal at SCS's rail load-outs in Virginia, Kentucky and West Virginia.

10. During these discussions Thrasher inquired as to how many tons of metallurgical and soft coking coal SCS had available for sale, and SCS advised Thrasher that SCS's operating

affiliates were producing substantial tons of metallurgical and soft coking coal per year and were expanding their operations to produce additional tonnage.

11. Thrasher represented to SCS he could sell all of SCS's available metallurgical and soft coking coal.

12. Thrasher, in convincing SCS to transfer its business to Xcoal, represented to SCS among other things:

> i) In response to SCS's asking Thrasher how many tons Xcoal could and wanted to purchase, Thrasher responded that Xcoal could handle any quantity produced by SCS, because as Thrasher stated. "I can buy it all because I have an unlimited marketplace";
>
> ii) That Xcoal had was a major player in and had a significant amount of the coal sales business in Korea, Japan and China tied up;
>
> iii) That he had just returned from Asia and had contracts for delivery and therefore he could pay SCS for its coal product the stated prices which became part of the purchase orders described below.

13. Based upon Thrasher's representations and guarantees of performance, SCS shifted a majority of its coal sales relationship from its existing customers to Xcoal, in some cases away from customers that had been customers of SCS's affiliates for decades.

14. In March and April 2011, SCS and Xcoal entered into, among others, the following purchase orders:

> A. Purchase Order No. MET3345-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit A), which obligated Xcoal to purchase 120,000 tons of low/mid vol metallurgical coal.

3

B.  Purchase Order No. MET3346-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit B), which obligated Xcoal to purchase 320,000 tons of mid vol metallurgical coal.

C.  Purchase Order No. MET3348-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit C), which, as amended, obligated Xcoal to purchase 490,000 tons of high vol soft coking metallurgical coal.

D.  Purchase Order No. MET3349-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit D), which obligated Xcoal to purchase 200,000 tons of high vol metallurgical coal.

E.  Purchase Order No. MET3350-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit E), which, as amended, obligated Xcoal to purchase 360,000 tons of high vol soft coking metallurgical coal.

F.  Purchase Order No. MET3370-11 dated June 8, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit F), which obligated Xcoal to purchase 1,700,000 tons of high vol metallurgical coal.

G.  Purchase Order No. MET3371-11 dated June 8, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit G), which obligated Xcoal to purchase 720,000 tons of high vol soft coking metallurgical coal.

15. All told, Xcoal was obligated under these purchase orders to take 3.91 million tons of coal and to pay SCS over $560 million for the coal.

16. Less than 60 days after entering into the above described purchase orders, Xcoal routinely and persistently refused to accept delivery of the contractually designated volumes of SCS's coal under the purchase orders; in fact on some purchase orders Xcoal has refused to accept delivery of any coal.

17. During Xcoal's continuous nonperformance SCS consistently attempted to contact Thrasher and Xcoal via email, telephone and text message to schedule meetings or conference calls to discuss Xcoal's nonperformance. In most instances SCS would receive no response from Thrasher or Xcoal.

4

18. In rare instances when Xcoal and/or Thrasher would respond to SCS communications, Xcoal and/or Thrasher would commit to scheduled follow up conference calls, meetings and shipping schedules, but Xcoal and Thrasher consistently failed to follow through on their commitment to have a phone call, in person meeting or provide a shipping schedule.

19. Because, by early 2012, Xcoal had continuously failed to perform under the above purchase orders and based on Thrasher's continuing assurances and promises of performance, SCS agreed to amend the above mentioned purchase orders to extend Xcoal's performance deadlines throughout 2012 and into the first three months of 2013 ("the Amended POs").

20. Like the above mentioned purchase orders, the Amended POs constituted binding contracts for the purchase and sale of coal.

21. Since amending the purchase orders, notwithstanding Thrasher's assurances and promises to perform, Xcoal continuously failed to perform under the Amended POs. As of the date of this Complaint, Xcoal has purchased the following coal tonnages on the Amended POs:

   A. Purchase Order No. MET3345-11: zero tons purchased of 200,000 required tons.

   B. Purchase Order No. MET3346-11: zero tons purchased of 320,000 required tons.

   C. Purchase Order No. MET3348-11: 34,943 tons purchased of 490,000 required tons.

   D. Purchase Order No. MET3349-11: zero tons purchased of 200,000 required tons.

   E. Purchase Order No. MET3350-11: 102,416 tons purchased of 360,000 required tons.

5

Case 7:12-cv-00265-JCT   Document 1   Filed 06/18/12   Page 5 of 11   Pageid#: 5

F. Purchase Order No. MET3370-11: 253,144 tons purchased of 1,700,000 required tons.

G. Purchase Order No. MET3371-11: 516,009 tons purchased of 720,000 required tons.

22. Between December 15, 2011 and June 2012, SCS has delivered to Xcoal a total of 450,856.45 tons of coal, which was all of the coal ordered by Xcoal during that period. Xcoal was obligated to pay $45,339,927.25 for that coal; however, to date, Xcoal has paid only $20,831,117.85 towards its total payment obligation for the delivered coal, leaving a balance due of $24,508,809.40.

23. As a result, Xcoal has breached its obligations to pay SCS for coal that was delivered to it.

24. Moreover, even after the amendments to the purchase orders, Xcoal has failed to order any coal on nearly all of the POs since the date of the amendment..

25. Based on past performance, it is plain that Xcoal will be unable to fulfill its contractual obligations to take the additional 3,003,488 tons of coal that it has yet to schedule under the Amended POs for delivery by March 2013..

26. Thus, Xcoal has repudiated its obligations, and accordingly breached its obligations, to purchase 3,003,488 tons of coal under the Amended POs or, alternatively, by this pleading, SCS demands adequate assurances, acceptable to SCS, from Xcoal, to be delivered by Xcoal to SCS within 21 days from the service of this pleading, that it is willing and able to purchase all of the remaining 3,003,488 tons of coal by March 2013.

27. During the time periods of the purchase orders and the Amended POs, SCS and its affiliates were negotiating with a prospective buyer to sell to those buyers the coal operations that supported the purchase orders and the Amended POs.

28. Because of the breaches and utter nonperformance by Xcoal complained of herein, Plaintiff and its affiliates were denied the opportunity to sell certain of their operations at substantial profits.

29. At all times Thrasher and the Xcoal Defendants were aware of the efforts by Plaintiff and its affiliates to sell certain of their operations, as well as the impact that their breaches of the POs would have on that effort.

30. Moreover, as was known to Defendants would be a consequence of their breaches and misrepresentations, Plaintiff and its affiliates have been required to shut down operations, lay off miners and/or eliminate work shifts.

31. Plaintiff has performed all conditions precedent to bringing this action, and/or all such conditions have been waived or excused.

## COUNT I: BREACH OF CONTRACT

32. This is a claim for breach of contract against the Xcoal Defendants.

33. In support of this Count, Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

34. Xcoal has failed to pay SCS $24,508,809.40 that is due with interest for coal that SCS has delivered to Xcoal.

35. In addition, Xcoal has failed to purchase 120,000 tons of low/mid vol met coal that it was required to purchase under Amended PO No. 3345-11 for a total contract price of $24,240,000.

36. In addition, Xcoal has failed to purchase 320,000 tons of mid vol met coal that it was required to purchase under Amended PO No. 3346-11 for a total contract price of $72,000,000.

37. In addition, Xcoal has failed to purchase 455,057 tons of high vol soft coking coal that it was required to purchase under Amended PO 3348-11 for a total contract price of $47,780,985.

38. In addition, Xcoal has failed to purchase 200,000 tons of high vol met coal that it was required to purchase under Amended PO No. 3349-11 for a total contract price of $32,120,000.

39. In addition, Xcoal has failed to purchase 257,584 tons of high vol soft coking coal that it was required to purchase under Amended PO No. 3350-11 for a total contract price of $27,046,320.

40. In addition, Xcoal has failed to purchase 788,847 tons of high vol met coal that it was required to purchase under Amended PO 3370-11 at $160.60 per ton and another 658,009 tons of high vol met coal under that same Amended PO at $130.60 per ton for a total contract price of $212,624,803.20.

41. In addition, Xcoal has failed to purchase 203,991 tons of high vol soft coking coal that it was required to purchase under Amended PO 3371-11 for a total contract price of $21,419,055.

42. Xcoal's breaches aforesaid have proximately damaged SCS in an amount to be proved in this action.

43. Xcoal LLC is liable to Plaintiff for Xcoal's breaches as the general partner of Xcoal.

## COUNT II: FRAUD

44. This is an action for fraud by SCS against Thrasher and the Xcoal Defendants.

45. SCS incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint, as if fully set forth herein.

46. Defendants' representations of their ability to perform under the purchase orders and the Amended POs, including but not limited to the representations mentioned above, were false and constitute a misrepresentation of existing facts, which Defendants made in order to induce SCS's reliance thereupon.

47. SCS has justifiably relied upon Defendants' misstatements by entering into the purchase orders and Amended POs and by committing a majority of its coal to support its commitments under the purchase orders and the Amended POs.

48. In addition to the misrepresentations described above, Defendants, at various times, have declined to purchase coal, telling SCS that they did not have a market, when in fact they were then buying coal from other suppliers at reduced prices in order to profit from their breaches. Defendants made these representations intentionally, in an effort to cover up their misconduct.

49. SCS's reliance upon Defendants' misrepresentations has inured to their detriment.

50. Moreover, as a foreseeable and proximate consequence of Defendants' misrepresentations and their failure to perform as represented, Plaintiff and its affiliates have: suffered lost revenue and profits; suffered significant negative impacts to their mining operations in the form of layoffs, shift reductions and other similar results; and lost their profitable sale of certain operations.

9

51. Defendants have acted in this regard maliciously, wantonly, willfully and in reckless and callous disregard of the rights of SCS warranting an award of exemplary damages against Defendants.

### COUNT III: DURESS

52. In support of this count, SCS incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

53. From January 2011 to the date of the amendment to the purchase orders and further through the date of this Complaint, Xcoal routinely and persistently refused to accept delivery of the contractually designated volumes of SCS's coal under the purchase orders and the Amended POs.

54. During said period, Plaintiff's economic survival and that of its affiliates depended heavily upon Xcoal's willingness to accept the amounts of coal that it contracted for under the purchase orders and the Amended POs, and Defendants were keenly aware of this fact.

55. Prior to amending the purchase orders and thereafter, and banking on their breaches and the resulting duress that Xcoal knew it was causing Plaintiff and its affiliates, Xcoal demanded that SCS agree to extend times for performance by Xcoal.

56. Because Plaintiff's economic survival and that of its affiliates depended in large part upon Xcoal's compliance with its obligations to accept delivery of the stipulated volumes of coal under the purchase orders and the Amended POs, SCS agreed to extensions for the time for performance under the purchase orders and the Amended POs.

57. As a result of the foregoing, SCS incurred and continue to incur substantial damages.

WHEREFORE, Plaintiff prays that it be awarded damages as follows:

10

A. On Count I, for compensatory damages against Xcoal and Xcoal LLC;

B. On Count II, for damages against all Defendants, compensatory, consequential and punitive;

C. On Count III, for compensatory damages against Xcoal and Xcoal LLC;

D. On all Counts for pre-judgment interest, costs and a reasonable attorney's fee;

E. For such other relief as is deemed just and proper.

**SOUTHERN COAL SALES CORPORATION**

By /s/M. Mallory Mantiply
      Counsel

M. Mallory Mantiply (Bar No. 19722)
Spilman Thomas & Battle, PLLC
Post Office Box 90
310 First Street, Suite 1100
Roanoke, Virginia 24002-0090
Telephone: (540) 512-1800
Facsimile: (540) 342-4480
Email: mmantiply@spilmanlaw.com

and

Paul E. Sullivan (*Pro Hac Vice Application Pending*)
Barry D. Hunter (*Pro Hac Vice Application Pending*)
Medrith Lee Norman(*Pro Hac Vice Application Pending*)
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
Telephone: (859) 231-0000
Facsimile: (859) 231-0011

*Attorneys for Plaintiff*