CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 1 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SOUTHERN COAL SALES CORP., ) | |
| ) | Case No.: 7:12-cv-00265-JCT |
| Plaintiff/Counter-defendant, ) | |
| ) | |
| v. ) | **Memorandum Opinion** |
| ) | |
| XCOAL ENERGY & RESOURCES, ) | |
| ) | By: Hon. James C. Turk |
| Defendant/Counter-plaintiff, ) | Senior United States District Judge |
| ) | |
| and XCOAL ENERGY & RESOURCES, LLC, ) | |
| and ERNIE THRASHER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint,[1] ECF No. 46. Plaintiff filed a response in opposition and Defendants have replied. ECF Nos. 52, 53. Additionally, Plaintiff filed a motion for leave to file a sur-reply, ECF No. 54, which the Court **GRANTS**. Accordingly, the Court has also considered the sur-reply, attached as Exhibit 1 to ECF No. 54. The Court heard arguments on the motion to dismiss on January 31, 2013, and it is now ripe for decision.

Defendants move for partial dismissal of the Amended Complaint as to four items. Specifically, they request that the Court (1) dismiss with prejudice Count II (the fraud claim) as against all Defendants; (2) dismiss with prejudice all claims against Ernie L. Thrasher; (3) dismiss and strike from the Amended Complaint Plaintiff's request for punitive damages; and (4)

---

[1] The Court previously granted in part and denied in part Defendant's Motion to Dismiss Counts II and III of the Original Complaint, but granted Plaintiff leave to amend. The Amended Complaint that is at issue herein was timely filed within the period set by the Court.

1

dismiss and strike from the Amended Complaint Plaintiff's request for consequential damages under Count I (the breach of contract claim).

For the reasons set forth herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I. FACTUAL BACKGROUND

The Amended Complaint alleges the following, which this Court accepts as true for purposes of ruling on the motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008): Plaintiff Southern Coal Sales Corporation ("SCS") is a Delaware corporation with its principal place of business in Roanoke, Virginia, and is in the business of mining and selling coal. Xcoal Energy & Resources ("Xcoal") and Xcoal Energy & Resources, LLC (collectively the "Xcoal Defendants") are a Pennsylvania limited partnership and a Pennsylvania limited liability company, respectively, and both have their principal place of business in Pennsylvania. Ernie Thrasher is a citizen and resident of Florida and a principal owner of the Xcoal Defendants as well as Xcoal LLC's managing partner. ECF No. 43, Am. Compl. ¶¶ 1-4.

During meetings between Thrasher and Jim and Jay Justice, held on February 9, 2011 and March 17, 2011, and during phone calls in the same period, Thrasher made several false representations to SCS. Specifically, Thrasher inquired as to how many tons of metallurgical and soft coking coal SCS had available for sale and represented "he could sell all of SCS's available metallurgical and soft coking coal." Id. ¶¶ 10-11. SCS also alleges that Thrasher made the following representations:

> i. In response to SCS's asking Thrasher how many tons Xcoal could and wanted to purchase, Thrasher responded that Xcoal could handle any quantity produced by SCS, because as Thrasher stated, "I can buy it all because I have an unlimited marketplace";

2

> ii. That Xcoal was a major player in and had a significant amount of the coal sales business in Korea, Japan and China tied up; [and]
>
> iii. That he had just returned from Asia and had contracts for delivery with locked in prices to resell all of the coal that Xcoal was proposing to buy from SCS and therefore Xcoal could pay SCS the then prevailing high market prices for its coal, which became part of the purchase orders . . .

Id. ¶ 12.

SCS and Xcoal subsequently entered into a series of seven purchase orders (five dated March 17, 2011 and two dated June 8, 2011), pursuant to which Xcoal agreed to purchase coal of various specifications in certain amounts and at certain prices. Under the purchase orders, Xcoal was obligated to purchase from SCS approximately 3.91 million tons of coal and to pay SCS over $560 million for the coal, with a delivery period ending March 2012. Xcoal, however, routinely refused to accept delivery of the volumes of coal designated under the purchase orders.[2] Id. ¶¶ 16-22.

Later, after Xcoal's continued failures to perform and based on "Thrasher's continuing assurances and promises of performance," the parties entered into amended purchase orders in which SCS agreed to extend performance deadlines into the first three months of 2013. Id. ¶ 28-29. As of June 2012, SCS had delivered to Xcoal a total of approximately 450,856.45 tons of coal, which was all of the coal ordered by Xcoal during that period. Xcoal was obligated to pay approximately $45 million for that coal, but has only paid approximately $20 million, and still owes approximately $24.5 million for coal already delivered. Id. at ¶ 31. SCS alleges that

---

[2] In its Answer and Counterclaim for damages, Xcoal contends that some of the coal delivered did not meet the quality specifications as set forth in the purchase orders and thus had to be rejected. Xcoal further alleges that SCS did not timely deliver at least some of the coal ordered.

3

Xcoal's repeated failures to perform constitute a breach of the contracts (both the original and amended Purchase Orders) and that Plaintiff and its affiliates have suffered significant damages as a result of the breaches. SCS also alleges that the Xcoal Defendants breached their obligations in bad faith and in order to profit by buying coal from other suppliers at the reduced prices currently prevailing in the coal markets. Id. ¶ 42

Count I asserts a breach of contract claim against the Xcoal Defendants based on these failures and anticipated failures to perform by Xcoal. Id. ¶¶ 47-58. Count II asserts a fraud claim against all defendants, including Thrasher, based on the alleged misrepresentations that Xcoal had existing contracts to resell the coal it proposed to buy from SCS. Id. ¶¶ 59-65. SCS alleges that the misrepresentations were made for the purpose of inducing SCS to enter into the purchase orders; that SCS justifiably relied on those misstatements; and that it was damaged as a result. It also alleges that Defendants have acted maliciously, wantonly, and willfully, entitling SCS to an award of exemplary damages. Id. ¶ 65.

## II. MOTION TO DISMISS STANDARD & FRAUD ELEMENTS

To survive a motion to dismiss, the plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Because Defendants seek dismissal of the fraud claim, the Court also notes the elements of a claim of fraud under Virginia law. To succeed, a party must show, by clear and convincing evidence, "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party

4

misled." State Farm Mut. Auto. Ins. Co. v. Remley, 618 S.E.2d 316, 321 (Va. 2005) (citations omitted). Additionally, federal courts in Virginia have concluded that the elements for a claim of fraudulent inducement are basically the same:

> To state a cause of action for fraudulent inducement of contract under Virginia law, a plaintiff must allege that the defendant made "misrepresentations [that] were 'positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.

Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (quoting Lucas v. Thompson, 2003 WL 483831, at *3 (Va. Cir. Ct. 2003)).

III. ANALYSIS

A. Motion to Dismiss the Fraud Count

Defendants first argue that the fraud claim in Count II must be dismissed in its entirety based on Virginia's economic loss rule, which is discussed in more detail below. SCS raises three objections to the dismissal of the fraud count, the first two of which are related procedural arguments. First, SCS contends that because Defendants failed to raise their economic loss argument in their first motion for dismissal of the fraud claim, they are barred from raising it at this point, pursuant to Fed. R. Civ. P. 12(g)(2). Relatedly, SCS posits that this Court's prior ruling (in which it stated that the allegations in the First Complaint stated a claim for fraudulent inducement) has become the law of the case and bars dismissal of the fraud count. SCS's third argument is one that addresses the merits of the economic loss rule, arguing that it is inapplicable here. In particular, SCS argues that the economic loss rule does not apply where the fraud alleged was "perpetrated before a contract between the two parties came into existence," as is alleged

5

here. See ECF No. 52 at 10 (citing and quoting Abi-Najm v. Concord Condo., LLC, 699 S.E.2d 483, 490 (Va. 2010)).

The Court need not address the procedural arguments raised by SCS, because it concludes that Defendants are not entitled to dismissal of the fraud claim based on the economic loss rule. Accordingly, it will address the merits of the motion to dismiss the fraud claim, rather than rely on any argument of waiver under 12(g)(2) or the doctrine of law of the case.

As explained by the Fourth Circuit, Virginia's

> economic loss rule is intended to preserve the bedrock principle that contract damages be limited to those "within the contemplation and control of the parties in framing their agreement." Kamlar Corp. v. Haley, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983). The Supreme Court of Virginia has noted that the absence of such a limitation on damages in tort actions has "led to the 'more or less inevitable efforts of lawyers to turn every breach of contract into a tort.'" Id. (citing W. Prosser, Handbook of the Law of Torts § 92, at 614 (4th ed. 1971)). . . . The economic loss rule restrains such efforts by preventing a plaintiff from pasting an ill-suited tort label on a set of facts that supports nothing more than a breach of contract claim. The rule undermines such a strategy because it prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort. The rule's purpose therefore is not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim. In such situations, there is no risk that a plaintiff will be pursuing a tort remedy when in fact he should be confined to a contract remedy. Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply.

City of Richmond v. Madison Mgmt. Grp., Inc., 918 F.2d 438, 446 (4th Cir. 1990) (internal citation omitted).

In their motion, Defendants cite liberally to Wolf v. Fed. Nat'l Mortg. Ass'n, 830 F. Supp. 2d 153 (W.D. Va. 2011), which contains numerous statements consistent with the

6

foregoing general principles of Virginia's economic loss rule. There, the Court concluded that the rule barred plaintiff's fraud claim. While Defendants contend that Wolf is directly on point, there are a number of distinctions between the claim alleged here and the allegations in Wolf. In particular, the Wolf Court noted that plaintiff's "loosely–articulated cause of action for fraud" failed to adequately plead the claim because she did "not allege a false representation of a material fact." Id. at 166. Additionally, in Wolf there was no allegation that the defendants had the intent to mislead her. Id. Moreover, and significantly, the alleged act of fraud occurred after the contractual relationship between the plaintiff and the fraud defendants. See id. at 165-66, 156-57 (describing fraud claim and describing overall background). By contrast, the plaintiff here has alleged both a false representation of a material fact and an intent to mislead, as well as a fraudulent statement made prior to the contract at issue.

Similarly, Defendants' reliance on Acuna v. Chase Home Fin., LLC, 2011 WL 1883089 (E.D. Va. 2011), is misplaced. Like Wolf, Acuna did not involve a misrepresentation in the inducement of a contract because the alleged misrepresentations did not occur prior to the parties entering into a contractual relationship, but instead allegedly occurred during the course of that relationship Id., at *7 (the alleged misrepresentations "all arise out of the parties' contractual duties" and "pertain to the parties' obligations" under the contract). Thus, neither of these cases control the outcome here.

Instead, the fraud claim here falls comfortably within the "fraud in the inducement" exception to the economic loss rule, recognized by the Fourth Circuit and Virginia courts alike. For example, in Abi-Najm, the Supreme Court of Virginia noted that the economic loss rule would not prevent a fraud claim based on a representation that occurred before the contract came into existence. 699 S.E.2d at 490. The Fourth Circuit, too, has recognized that the economic loss

7

rule does not preclude a fraud claim where the fraud is based on misrepresentations that preceded the contract. See, e.g., City of Richmond, 918 F.2d at 447 (where the plaintiff alleged that the defendants "violated a duty imposed by tort law, i.e., the duty not to commit fraud," the defendants were "not entitled to the protection of the economic loss rule, which protects only those defendants who have breached only contractual duties."). Accord Whalen v. Rutherford, 2012 WL 6473151, *6 (W.D. Va. Dec. 13, 2012) (claim for fraudulent inducement was not barred by the economic loss rule because it stemmed from a duty imposed by tort law, namely "the duty not to commit fraud"); Marcano v. Fox Motors, Inc., 2011 WL 1326999, at *3 (E.D. Va. Apr. 7, 2011) ("One well-settled instance, both as a matter of law and as a matter of logic, where the duty allegedly violated arises outside of contract and, thus, may support a cause of action for fraud, is where the allegedly fraudulent representation occurred before the contract came into existence."); id. (fraud claim was not barred by the economic loss rule where plaintiff alleged that, prior to entering into a contract to purchase a van, the defendant misrepresented that the "van was in good condition and that [defendant] had personally been driving the van and was familiar with its condition."); McKesson Med.-Surgical, Inc. v. Kearney, 271 F. Supp. 2d 827, 829 (E.D. Va. 2009) (noting the Fourth Circuit "has continuously held that when a fraud precedes the formation of a contract, the duty breached is not contractual in nature, and thus, the economic loss rule does not apply" (citing City of Richmond, 918 F.2d at 446-47)); Barnette v. Brook Rd., Inc., 429 F. Supp. 2d 741, 750-51 (E.D. Va. 2006) (where plaintiff alleged that defendant "made statements that it knew at the time were false in order to induce her to sign a contract[,]" she stated a "claim for fraud that falls outside of the economic loss rule").

8

Finally, to the extent Defendants contend that the fraud claim fails (or is barred by the economic loss rule) because SCS has failed to plead that Thrasher made the misrepresentations with an intention not to perform, see ECF No. 53 (suggesting as much and citing to Abi-Najm and Khader v. Hadi Enters., 2010 WL 5300876 (E.D. Va. Dec. 22, 2010)), the Court disagrees. It is true that those cases and others recognize that when fraud in the inducement is based on a claim that a party intends to perform, the party must have a present intention not to perform in order to make the statement fraudulent. See, e.g., Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 537 (4th Cir. 1988) ("[F]raud cannot ordinarily be predicated on unfulfilled promises or statements of future events. But the Virginia Supreme Court recently held that fraud can be found in a breach of contract if the defendant did not intend to perform at the time of contracting" because then his promise to perform was "a misrepresentation of present fact" (internal citations and quotation marks omitted)); Abi-Najm, 699 F.3d at 490 (same). But those cases do not stand for the broad proposition, as urged by Defendants, that the *only* type of promise that can support a fraudulent inducement claim is a promise to perform that is made with no present intent to perform. Instead, as discussed above, Virginia courts and lower courts within the Fourth Circuit have explicitly noted that misrepresentations of present fact made prior to a contract's formation, but made to induce a plaintiff to enter into the contract, can support a fraud claim and are not barred by the economic loss rule. See supra at 7-8.

Based on this ample authority, the Court concludes that SCS's fraud claim is not barred by the economic loss doctrine. Accordingly, Defendants' motion to dismiss the fraud claim is denied.

9

### B. Motion to Dismiss Ernie Thrasher

Defendants also contend that Ernie Thrasher is not a proper defendant because he acted only on behalf of, and as an agent for, Xcoal and thus cannot be held personally liable. In response, SCS cites to authority that holds that "an agent is always liable for his own torts." ECF No. 52 at 7 (quoting Estate of Curry v. Anderson, 2010 WL 7375615, at *4 (Va. Cir. Ct. Jan. 14, 2010)).

In reviewing the Amended Complaint, the only claim that identifies Mr. Thrasher as a defendant is the fraud claim in Count II. See ECF No. 43, Am. Compl. ¶ 59. Count I, the breach of contract claim, is brought only against the Xcoal Defendants. Id. ¶ 47. Thus, cases that discuss an agent's liability for a breach of contract by the principal are inapposite, as are issues concerning whether the corporate veil can be pierced to impose personal liability. See Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 929 (4th Cir. 1984) (corporate officers are generally not liable for a corporate contractual obligation).

Instead, the question is whether a fraud claim can be brought against Mr. Thrasher in his personal capacity, and Virginia law allows such liability. Id. at 929 (in case governed by Virginia law, noting that "[c]orporate officers may of course be liable jointly and severally with their corporations for obligations arising out of tortious conduct of the officers that subject the corporation to liability" and citing to Restatement (Second) of Agency, § 343 (1957)); see also Miller v. Quarles, 410 S.E.2d 639, 642 (Va. 1991) ("Both principal and agent are jointly liable to

10

injured third parties for the agent's [negligence] . . . .").[3] Accordingly, the motion to dismiss Mr. Thrasher as a defendant is denied.

## C. Motion to Dismiss the Claims for Punitive Damages and Consequential Damages

Defendants do not contend that punitive damages and consequential damages are unavailable in an action for fraud. In light of the Court's ruling that the fraud claim should not be dismissed, the Court likewise denies Defendants' motion to dismiss and strike from the Complaint SCS's claims for punitive and consequential damages on the fraud claim.

In SCS's breach of contract claim, it does not seek punitive damages, but does request "compensatory, incidental, and consequential damages." ECF No. 43 ¶ 65(A). Defendants have also moved to dismiss and to strike Plaintiff's claims for incidental and consequential damages on the breach of contract claim. ECF No. 47 at 9-10. The availability of damages on the breach of contract claim will be governed by New York law, as provided in the purchase orders. Defendants have cited to numerous cases that have held that a seller is barred from recovering consequential damages allegedly resulting from the breach of a contract for the sale of goods. Id. (collecting authority). Plaintiff did not respond to this argument in its filings and, at the hearing before the Court, Plaintiff's counsel conceded that SCS is not entitled to consequential damages under New York law on its breach of contract claim. Accordingly, Defendants' motion to

---

[3] Defendants cite to Fed. Real Estate & Inv. Corp. v. Carl Frye's Mobile Home & Modular Hous., Inc., 1980 WL 143155 (Va. Cir. Ct. 1980) as "dismissing fraud claim against president of corporation in personal capacity where alleged activities of president could easily have occurred in his capacity as agent for the corporation." ECF No. 47 at 6, but the Court believes that is a misreading of that case. While there was a fraud claim alleged in Fed. Real Estate & Inv. Corp., that claim did not withstand demurrer. Id. at *2. Thus, the discussion of whether the individual defendant could be held responsible appears to be related to the contract claim, not the fraud claim. Id.; see also id. at *1 (explaining the claims in the case). In any event, to the extent that Defendants' interpretation of that case is correct, the Court concludes it is contrary to Supreme Court of Virginia's proclamation in Miller and the Fourth Circuit's decision in Sit-Set.

11

dismiss and to strike is granted insofar as it seeks the dismissal and striking of SCS's claim for consequential damages as part of the breach of contract claim.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss the Amended Complaint.

An appropriate order shall issue this day.

ENTER: This １ st day of February, 2013.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge